The STATE of Texas, Relator,

v.

Hon. Donald M. MARKLE, District Judge, et al., Respondents.

No. 14101.

Court of Civil Appeals of Texas.

Houston.

Dec. 13, 1962.

Rehearing Denied Jan. 10, 1963.

Will Wilson, Atty. Gen., and Ben M. Harrison, J. Arthur Sandlin, Thomas H. Peterson and Joe A. Osborn, Asst. Attys. Gen., Austin, for relator.

Barker, Barker & Coltzer, Owen D. Barker, Armstrong, Bedford & Lambdin, Galveston, for respondents.

BELL, Chief Justice.

This is an original proceeding in which the State of Texas, through the Attorney General of Texas, seeks to obtain a writ of mandamus against the Honorable Donald M. Markle, District Judge, compelling him to proceed to hear and try a suit for writ of temporary injunction filed by relator against the other respondent, Galveston East Beach, Inc., seeking to enjoin such other respondent from interfering with the use by the public of what is known as "East Beach" in Galveston and to require the removal of barricades erected across the road that is the means of access to said beach.

Cause No. 97,893, in the 10th District Court of Galveston County was filed February 15, 1962 by respondent Galveston East Beach, Inc., herein called Beach Co. The suit seeks a judgment declaring that it is the owner of the 384 acres described in its petition and that neither the State of Texas, its subdivisions, nor the public or any member of the public, has any easement or any right or claim to the land above the line of mean low tide. The suit for a declaratory judgment is brought pursuant to Section 6 of Article 5415–d, V.A.T.S., and the Uniform Declaratory Judgment Act, Article 2524–1, V.A.T.S. Article 5415–d is what is commonly known as the "Open Beaches" bill. Section 6 confers authority on the littoral owner to seek a declaratory judgment. The petition alleges ownership in the Beach Co. and alleges the provisions of Article 5415–d cast a cloud on its title.

To this petition the relator filed its answer contending that the people of Texas had a right of use of a means of access to the shores and waters of the Gulf of Mexico and the right to use and enjoy the beaches from the line of mean low tide to the line of vegetation. The basis of these asserted rights in the public is as follows:

1. Before, at and all of the time since the Menard Grant of a portion of Galveston Island by the Republic of Texas on January 5, 1838, the area extending from the

line of mean low tide to the line of vegetation bordering the Gulf of Mexico has been so used by the people, without overt challenge, question or interruption, that such use has become a part of our honored custom and common law. Such inherent right has been retained through continued use by the public.

2. At and before such grant said beach area was dedicated as a public way for use by the public for purposes of fishing, camping, swimming and boating. The long use by the public and acquiescence therein by the Beach Co. and its predecessors in title reflect a dedication to public use.

3. Dedication of such beach area subsequent to the Menard Grant.

4. Acquisition by the public of an easement by prescription.

5. Estoppel against the Beach Co. and its predecessors in title to deny such rights of use in the public because they permitted Galveston County to expend public funds in keeping the beach area free of debris and other obstructions and in maintaining said beach.

On June 14, 1962 relator, having been informed that on June 15 the Beach Co. would place a guard so as to prevent vehicular traffic to the beach area and the road used in connection therewith, asked for a temporary restraining order. This was refused on June 15 and at that time the hearing on temporary injunction was set by agreement of the parties for July 11. On July 2 relator filed its amended application for a temporary injunction, the only change being the allegation that the action threatened by the Beach Co. had been taken. The substance of the allegations in the petition for temporary injunction was that the public had the right to access to the beach and the waters of the Gulf of Mexico and the use of the beach between the line of mean low tide and the line of vegetation for the purpose of boating, swimming, fishing and camping, it having acquired an easement for such purpose through immemorial use, through dedication, both before and after the Menard Grant, and by prescription. It alleges the public had for many years used the property without any interference and such situation was the last placeable uncontested condition and this was changed by respondents' action. It then alleges erection of barricades which prevent vehicular traffic and thus prevents use of a road giving full access to the beach and interferes with use of the beach by the public. It alleges the Beach Co. was charging $1.00 for each vehicle admitted by it through the barricade.

The Beach Co. answered this petition, setting up, among other things, that Article 5415-d, V.A.T.S., was unconstitutional because it deprived it of its property without due process of law. We think it unnecessary to notice the other defenses alleged.

When the case, insofar as the temporary injunction is concerned, came on for hearing on July 11, the Court entered an order reciting that the relator's cause of action was founded on Article 5415-d; that the constitutionality of that statute was raised in this cause, and that the constitutionality of the same statute was involved in Cause No. 93,782, entitled The Attorney General of Texas et al. v. Seaway Company, Inc., in the 122nd District Court of Galveston County, which was on appeal to the Court of Civil Appeals, and the court was of the opinion it was necessary for him to know whether the statute was constitutional before he could properly rule on the application for temporary injunction. It was then ordered that no further proceedings would be held until the appellate courts had finally passed on the constitutionality of Article 5415-d, unless he was ordered to proceed by a court of competent jurisdiction.

The case of the Attorney General of Texas et al. v. Seaway Company, Inc. is now pending on appeal in this Court. The appellant is Seaway Company, Inc. Appellant does assert the unconstitutionality of

Article 5415–d. The property involved in the Seaway case is situated on what is called the "West Beach" of Galveston Island and is located some 20 miles from the "East Beach," the property involved in this original proceeding. The record in the case, which is very voluminous, reflects that judgment was rendered in favor of the State finding an easement in the public based on jury findings establishing such easement by dedication, long continued use, which right has been retained by the public, and by prescription. The area over which such easement was found was between the line of mean low tide and the line of vegetation.

We need not here notice in detail the provisions of Article 5415–d. The article merely declares it to be the policy of the State that members of the public shall have the free and unrestricted right of ingress and egress to the State-owned beaches on the seaward shore of the Gulf of Mexico and to the area between the line of mean low tide and the line of vegetation *in the event* that the right of use or an easement to such area has been acquired by prescription or dedication, or use has been retained by virtue of continuous right in the public. It is made an offense against said policy for anyone to interfere with such right of ingress and egress, but declares the right to free and unrestricted access over areas landward of the line of vegetation is satisfied by existing roads or ways or which with approval of any governmental authority having jurisdiction may be provided in the future. There is an express provision that nothing in the act shall be construed as affecting title to owners of land adjacent to any State-owned beach. It provides that in any suit brought where it is shown that the area involved is between the line of mean low tide and the line of vegetation the presumption arises that the littoral owner does not have the right to prevent the public from using the area for ingress and egress to the sea and that there has been imposed on the area, subject to proof of easement, a prescriptive right or easement in favor of the public for ingress and egress to the sea. It then places the duty on the Attorney General, County Attorney, District Attorney, or Criminal District Attorney, to file suits necessary to remove any obstruction or barrier interfering with use by the public. The act includes definitions that we need not notice.

The sole question we have before us is whether the trial judge should be required to proceed to trial of relator's application for temporary injunction.

Relator's position is that the refusal of the court to hold a trial on its application for a temporary injunction until after the appellate courts have passed on the constitutionality of Article 5415–d is under the facts so unreasonable as to amount to an abuse of discretion and therefore we have jurisdiction, which we should exercise, to issue a writ of mandamus. Respondents contend that a trial court has wide discretion in the control and disposition of his docket and we cannot control his exercise of discretion. Further, respondents say there has been no abuse of discretion in refusing to proceed until after the appellate courts decide the constitutionality of Article 5415–d, which is involved in the Seaway, Inc. case and which is also involved in the Beach Co. case.

■ It is well settled that under the terms of Article 1824, V.A.T.S., a Court of Civil Appeals has jurisdiction to issue a writ of mandamus to compel a District Judge to proceed to trial and judgment in a case. Allied Store Utilities v. Hunt, Tex. Civ.App., 148 S.W.2d 246; Willis v. Granger, Tex.Civ.App., 195 S.W.2d 831; Bergholm v. Peoria Life Ins. Co., Tex.Civ.App., 63 S.W.2d 1064; 37 Tex.Jur.2d, § 42.

■ It is frequently said that the Court of Civil Appeals may not through mandamus control the action of the trial court in a matter involving the exercise of discretion. This is, however, too broad a statement. The general rule has its limitations.

A writ of mandamus may issue where under the facts of the particular case there is a clear abuse of discretion. Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677.

■ We here hold that the refusal of the trial court to hear and determine the relator's application for temporary injunction was a clear abuse of the discretion he has in connection with the handling of his docket.

A reading of the record in this proceeding and in the Seaway, Inc. case convinces us that relator is not relying on Article 5415–d, except to the extent that it authorizes and places the duty on the Attorney General to bring suits to require removal of barricades or other obstructions that interfere with the members of the public in the exercise of their rights of ingress and egress to and from the waters of the Gulf of Mexico and in their use of the beaches to the line of vegetation. The act is not relied on to create any rights in the public and the presumption created, as above pointed out, is not relied on. As a matter of fact, a reading of the act indicates to us that it does not purport to create any rights or interfere with any rights of the landowner, but merely declares the policy of the State to protect such rights as the public may have. It is not necessary, however, that we pass on the validity of the act here. What we have said about it is occasioned by the injection by pleading of respondents of the question of the constitutionality of the act. Actually neither case attacks the constitutionality of the act insofar as it confers authority on the Attorney General. A reading of the relator's pleadings in both cases shows it must establish rights of access to and the right to use the beaches to the line of vegetation by showing the rights have been acquired by dedication, prescription or long continued use. The alleged statutory presumption was not relied on in the Seaway, Inc. case and there is no pleading of any presumption in this case. We do not mean it would have to be pled; we merely note

there is nothing to show it will be relied on and relator in its brief disavows any intention to rely on it.

Apart from the above, however, even if the constitutionality of the statute were involved in the two cases, it would be no legal or equitable ground for not trying the issue as to whether a temporary injunction should issue.

■■ In determining whether a temporary injunction should issue to preserve the status quo pending a trial of the case on its merits, the court does not finally pass on the constitutionality of a statute or finally determine its proper construction. It does not finally determine the rights of the parties. The only issue is whether the applicant is entitled to an injunction to preserve the status quo pending trial on the merits. To warrant the issuance of such a writ the court merely determines that a probable right and a probable injury are shown. If they are, the court has broad discretion in determining whether or not an injunction should issue. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549; Richter v. Hickman, Tex.Civ.App., 243 S.W.2d 466.

The policy of our law is that applications for temporary injunction should be heard speedily.

We have read all of respondents' authorities. They were all cases where an effort was made to obtain a final trial on the merits where the rights of the parties would be finally determined.

We are of the view that relator is entitled to a trial on its application for temporary injunction. We have no doubt the trial court will proceed to trial without the actual issuance of the writ. It is the order of the Court that a hearing on the application for temporary injunction be set to commence within 60 days from the date our opinion becomes final. No writ will actually issue unless our order be not complied with.